## A94A1628. WILSON v. THE STATE.
(447 SE2d 709)

BLACKBURN, Judge.

John Wilson appeals his conviction by a jury of attempt to commit burglary. On appeal, Wilson contends the trial court erred in allowing into evidence a videotape containing his oral statements and that the evidence was insufficient to support his conviction.

Rachael Reagan, age 11, testified that she and her six-year-old brother were at home alone when Wilson knocked on the front door. Rachael looked through the peephole and recognized Wilson as the man who had worked in their yard approximately ten times. Rachael did not open the door. Rachael observed Wilson return to his car and back it up the driveway next to the house. Rachael heard the car door close and then heard someone at her bedroom window trying to pry the screen off. Rachael's bedroom window was on the back corner of the house. After waiting about five minutes, Rachael and her brother ran out the front door to the neighbor's house and called 911.

Detective Phillips, with the LaGrange Police Department, testified that he arrived at the Reagans' house within 45 seconds of receiving the call over the police radio. Upon his arrival, he observed Wilson standing at the side of the house at a window. Wilson turned and attempted to run as Detective Phillips ran toward him; however, Wilson stopped upon Detective Phillips' command to do so. Thereafter, Wilson picked up a rake and began raking the dirt by the house and explained that he worked as the yardman.

Wilson testified that he went to the Reagans' house to do some

yard work. After parking his car, he heard some knocking at the back of the house. Upon investigating the noise, he found a black man and a white man by the windows at the back of the house. The black man had a shovel and was hitting it against the window, and the white man was "smoking a joint." Wilson told them that he was the yard-man and that they should get off the premises. Wilson testified that the black man hit him in the head and the leg with the shovel and took $5 from him. The two other men then ran off into the woods behind the house right before Detective Phillips arrived.

Rachael's mother Penny Reagan testified Wilson had worked on her yard during the past week and that he was not scheduled to be at her house on the day of the incident. Penny further testified Wilson had stopped by her house twice in the past week and asked for money. On one occasion she did not give him any, but on another occasion she gave him a few dollars. Detective Phillips testified, upon cross-examination by Wilson's counsel, he put Wilson on the ground and told him to shut up while Phillips waited for additional officers to arrive. Wilson's counsel asked if Wilson complained about being injured and Detective Phillips testified he heard Wilson telling Detective Pitts, at the book-in desk, that he had received an injury a few days earlier from some guys. Defense counsel asked if that was contained on the videotape and Detective Phillips responded affirmatively.

Detective Pitts testified he read Wilson his rights and that Wilson did not make any statements. Wilson neither denied his involvement, nor gave information implicating anyone else. Pitts further testified he did not see any injury on Wilson.

During Wilson's case, he introduced the testimony of three men who shared his cell the evening he was arrested. These witnesses testified they saw the wound on Wilson's head and that it looked like it was a day old. On rebuttal, the State, over Wilson's objection, introduced the videotape of Wilson at the book-in desk. During Wilson's rebuttal, he recalled Tyrone Frazier who had testified and been dismissed earlier but had remained in the courtroom. Frazier testified Wilson told him about the black man attacking Wilson as Wilson tried to stop the break-in.

1. Wilson claims reversible error occurred because the prosecutor failed to provide him with a transcript or summary of his in-custody statements reflected in the videotape as required by OCGA § 17-7-210. At the time Wilson made his in-custody statements, they were neither inculpatory nor incriminating. The videotape became incriminating only as a result of Wilson's testimony, and was used only for the purpose of impeachment. *Maddox v. State*, 210 Ga. App. 526 (20) (436 SE2d 730) (1993).

Wilson's failure to object or move for a mistrial when the testi-

mony was introduced constitutes a waiver of his claim. *Ahmed Al-Beti v. State*, 210 Ga. App. 312 (2) (436 SE2d 50) (1993); *Wadsworth v. State*, 209 Ga. App. 333 (9) (433 SE2d 419) (1993). Moreover, based on the record before us, it is unlikely that the admission of the videotape contributed to the verdict. *Talley v. State*, 251 Ga. 42 (302 SE2d 355) (1983); *Wallin v. State*, 248 Ga. 29 (5) (279 SE2d 687) (1981).

2. In his second enumeration of error, Wilson contends the trial court erred in denying his motion for new trial, which was based on the general grounds.

"If the jury believed the entirety of [Wilson's] testimony, it would have been authorized to return a verdict of not guilty of any crime. . . . However, it is also well settled that it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited." (Citations and punctuation omitted.) *Bowers v. State*, 177 Ga. App. 36, 39 (338 SE2d 457) (1985). Therefore, having reviewed the record in the light most favorable to the verdict, we conclude a rational trier of fact could have found Wilson guilty beyond a reasonable doubt of attempt to commit burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 4, 1994.

*Franklin H. Thornton*, for appellant.

*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney*, for appellee.